UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Crim. No. 3:CR-15- |
| v. | : | |
| | : | (Judge         ) |
| | : | |
| MIRELA DESOUZA, | : | |
| Defendant | | |

## INFORMATION

## THE UNITED STATES ATTORNEY CHARGES:

### COUNT I
### 18 United States Code, Section 371
### (Conspiracy to Structure Currency Transactions)

From in or about January 1, 2008 and continuing through

December 2011, in Monroe County, Pennsylvania, within the Middle

District of Pennsylvania, and elsewhere, the defendant,

### MIRELA DESOUZA

did knowingly combine, conspire, confederate, and agree with other

persons, both known and unknown to the Grand Jury, to commit the

following offense against the United States, that is, the Structuring of

Currency Transactions, in violation of Title 31, United States Code,

Section 5324(a)(1), (2) and (3).

## MANNER AND MEANS OF THE CONSPIRACY

In furtherance of the conspiracy, and to attain the objectives of the conspiracy, the defendant and coconspirators employed the following manner and means:

1.    It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant received U.S. Currency from coconspirators which represented the proceeds of some form of unlawful activity for the purpose of structuring the financial transactions to avoid transaction reporting and recording requirements under state and federal law by transmitting the unlawful proceeds in various increments via electronic transfer through a money transfer service owned and operated by Western Union and its respective agents called Vigo, to the Dominican Republic.

2.    It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators obtained nominee "sender" names in order to structure transactions at a financial institution and transfer funds to the Dominican Republic.    Using nominee "sender" names allowed the defendant and coconspirators to structure multiple financial transactions in an effort to avoid the

2

reporting and recordkeeping requirements triggered by a cash transfer of $3,000 or more.

3.    It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators obtained nominee "receiver" names in order to structure transactions at a financial institution and transfer funds to the Dominican Republic. Using nominee "receiver" names allowed the defendant and coconspirators to structure multiple financial transactions in an effort to avoid the reporting and recordkeeping requirements triggered by a cash transfer of $3,000 or more.

4.    It was part of the conspiracy that on multiple occasions during 2008 through 2011, the defendant and coconspirators engaged in numerous telephone conversations about structuring, assisting in structuring, and attempting to structure financial transactions.

## OVERT ACTS

In furtherance of the conspiracy, and to effect and accomplish the objects of the conspiracy, the defendant and coconspirators did commit and cause to be committed, the following overt acts, among others, in the Middle District of Pennsylvania and elsewhere:

1.     On or about July 21, 2011, the defendant engaged in a telephone conversation with coconspirators and agreed to the use of nominee names for the purpose of electronically transferring U.S. Currency to the Dominican Republic.

2.     On or about July 21, 2011, the defendant and coconspirators facilitated the electronic transfer of U.S. Currency to the Dominican Republic in the amount of $1900 using the nominee name of Rafael Mella.

3.     On or about August 26, 2011, the defendant engaged in a telephone conversation with coconspirators wherein nominee names and amounts of U.S. Currency were discussed for purposes of facilitating an electronic transfer of currency to the Dominican Republic.

4.     On or about August 26, 2011, the defendant and coconspirators facilitated the electronic transfer of U.S. Currency to the Dominican Republic in the amount of $2,400 using the nominee name of Dario Corzino.

All in violation of Title 18, United States Code, Sections 371.

4

## FORFEITURE ALLEGATION

1.     The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 31, United States Code, Section 5317.

2.     Pursuant to Title 31, United States Code, Section 5317, upon a conviction of an offense in violation of Title 31, United States Code, Section 5324, the defendant,

### MIRELA DESOUZA

shall forfeit to the United States of America all property, real or personal, involved in the offenses and any property traceable to such property.    The property to be forfeited includes, but is not limited to, the following:

> a.     Contents of M&T Bank account #9852769869 in the name of Tropical Express
>
> b.     money judgment forfeiture in the amount of $25,000.

3.     If any of the property described above, as a result of any act or omission

of the defendant:

5

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a
third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot

be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute

property pursuant to Title 31, United States Code, Section 5317(c), and

by Title 28, United States Code, Section 2461(c).


___5/12/15___
Date

PETER J. SMITH    MLO
United States Attorney

6